PARKER v. SOMMERVILLE.

(Supreme Court, Appellate Term, First Department. December 6, 1912.)

1. APPEAL AND ERROR (§ 1002*)—REVIEW—VERDICTS—EFFECT.

Upon appeal all disputed questions of fact must, by the appellate tribunal, be resolved in favor of the party receiving verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

2. ATTORNEY AND CLIENT (§ 145*)—COMPENSATION CONTRACT.

Where an attorney was unable to secure a compromise within the limits set by his client, and the client, in authorizing a compromise for a greater sum, limited the amount he would pay for the compromise and attorney's fee to a fixed sum, the attorney could not, after effecting the compromise under the last authorization, claim the fee which it was agreed he would be entitled to in case he effected the compromise for the first sum.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 334–335; Dec. Dig. § 145.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from City Court of New York, Trial Term.

Action by Horace E. Parker against William B. Sommerville. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Argued November term, 1912, before LEHMAN, PAGE, and HOTCHKISS, JJ.

Charles E. Wilson, of New York City, for appellant.

David B. Luckey, of New York City, for respondent.

LEHMAN, J.　The plaintiff herein has recovered a judgment for the unpaid balance of an alleged agreement to pay him the sum of $1,500 for procuring a settlement and adjustment of a claim against the defendant.

[1] Since the plaintiff has obtained a verdict against the defendant, we are bound to regard all disputed questions of facts as resolved in plaintiff's favor, and the sole question presented by the appeal is whether the plaintiff has presented evidence sufficient to sustain the judgment.

[2] For the purpose of this appeal, we must assume the following facts: The plaintiff was the attorney of record of one May, a defendant in an action in equity in Alabama. The defendant Sommerville was a codefendant in that action. He requested the plaintiff to go to Birmingham, Ala., to endeavor to secure a settlement of the case. While the plaintiff was the attorney of record only of May, the defendant Sommerville was financially more responsible than May, and it was understood that, in case of any settlement, he was to pay both the consideration for the settlement and plaintiff's fee. Plaintiff suggested to defendant that he thought that the case could be settled for $10,000, and defendant stated that he would be glad to settle for $15,000, and that he would agree that the plaintiff should retain as his fee the difference between the sum of $15,000 and the amount for which he could procure a settlement. The plaintiff did not agree to this offer, stating that, if he settled, as he believed he could, for $10,000, a fee of $5,000 would be exorbitant, and, on the other hand, his opinion that the case could be settled for $10,000 might turn out unfounded, and, if he was obliged to pay $15,000 in settlement, he would obtain, under the arrangement, no fee. After some discussion, it was then agreed that plaintiff should go to Birmingham, clothed with full authority to settle for the sum of $15,000 or less. If he could not obtain a settlement for $15,000 or less, the plaintiff was to telegraph for further instructions. It was also agreed that the defendant, in case a settlement was finally arrived at, should pay plaintiff for his services not less than $2,500 nor more than $3,000, the exact amount to be dependent upon defendant's decision of the value of the benefit derived. Before going to Birmingham, plaintiff was also informed that the defendant wished to have included in the settlement a smaller action known as the Jeroloman case, in which he was also a defendant. As a matter of expediency, it was decided that the actual payment of any consideration, and the delivery of releases in case of settlement, should be made in New York, and that, to prevent

the other side from learning that Sommerville was interested in a possible settlement, plaintiff should send all communications to May, instead of to this defendant. The plaintiff proceeded to Birmingham, and after considerable negotiations obtained an offer to settle the larger litigation for $15,000 and the smaller litigation for $1,000. Since plaintiff was not authorized to settle for the sum of $16,000, he telegraphed to May as follows:

"Sixteen thousand lowest will take. This does not include my fee. Includes Jeroloman and Mountjoy would go to New York and secure that. Telegraph me Hillman Hotel."

May answered:

"Party considers terms excessive make another effort to reduce before dropping. Is Austill there, answer."

Plaintiff then sent the following telegram to May's office:

"Sixteen thousand absolutely their lowest limit. Best possible time to settle expensive litigation. Mountjoy will return Oklahoma unless settled this figure. Telephone me to-morrow morning hotel at ten so can take afternoon train back if not settled. They commenced twenty-five and have come down sixteen. Hot at it all day and weary. Settled with Austill."

On the same day the plaintiff sent a telegram to May's home:

"Lowest limit. Go office very early night letter. Get party."

At the time it must be remembered that plaintiff had not yet earned any right to the agreed compensation. That compensation was made dependent upon his success in bringing the minds of the parties to a concurrence upon the terms of a settlement. The only terms upon which the defendant had agreed to a settlement were upon a payment of $15,000. He had a perfect right to refuse to agree to pay $16,000. The plaintiff claims, it is true, that the settlement at $16,000 for the two cases was as advantageous as a settlement at $15,000 for the larger suit; but this point is immaterial, for the suggested settlement differed from the settlement originally proposed by the defendant, and, moreover, the defendant had suggested the additional term that the settlement must include the smaller action before the plaintiff had left New York or entered into his employment. At this time the plaintiff was ready to abandon the negotiations, unless the defendant agreed to the terms suggested. The plaintiff's cause of action, therefore, depends upon the theory that the defendant did agree to these terms. It appears that on the following day May sent three telegrams which induced the plaintiff to continue in his efforts. These telegrams are as follows:

"Will reach party within an hour telegraph you final decision."
"If settled believe we can induce party increase fee afterwards."
"Final decision of party is seventeen thousand plus your traveling expenses to cover everything."

After receipt of these telegrams, the plaintiff completed the negotiations for settlement, telegraphed May the word, "Settled," and a settlement was consummated in New York. At that time the plaintiff received a check for $1,000, and subsequently received his traveling

expenses. The plaintiff at all times, however, claimed, both to May and to defendant's attorney, that he was entitled to an additional payment of $1,500. In my opinion, however, this claim is without justification. It is not disputed that, prior to the receipt of these last telegrams, the plaintiff had no authority to arrange a settlement at the sum of $16,000. The defendant had an absolute right to refuse any offer of settlement at any sum over $15,000, and in case of such refusal he would not have been liable for plaintiff's agreed compensation. When he authorized the acceptance of the offer, it was upon condition that he would pay only—

"seventeen thousand plus your traveling expenses to cover everything."

When the plaintiff then proceeded to settle, he had brought the minds of the parties together only through the acceptance by him of a condition made by the defendant. Although he may not have acquiesced in that condition in his own mind, he had no authority to accept the offer of the other parties to settle the litigation for $16,-000, except as such authority was given in these telegrams. Having accepted and acted upon the authority given, he cannot repudiate the condition upon which it was given. He, therefore, has earned no compensation under the earlier agreement, but was entitled only to the compensation included in the condition upon which the settlement was actually arranged.

The judgment should therefore be reversed, and a new trial ordered, with costs to appellant to abide the event.

HOTCHKISS, J. I concur. When plaintiff received May's telegram saying that $17,000 was to "cover everything," he should have stopped, and had the arrangement for his fees, as he claimed they were to be, adjusted. He could not proceed under the limitations of that telegram, and thereafter claim that his fees should be in excess of what remained of the $17,000 after the settlement was effected.

PAGE, J. I concur with Mr. Justice HOTCHKISS.